## VAN WERT *vs.* BENEDICT.

*In the matter of proving the last Will and Testament of* MARY MATILDA VAN WERT, *deceased.*

WHERE two instruments of a testamentary character are propounded by different parties, the several applications for probate will be consolidated and tried together.

The power to devise real and personal property, given to married women by the Act of April 11, 1849, is general, and not limited to property acquired subsequently to the passage of that act.

If a will be properly proved, it is the duty of the Surrogate to admit it to probate, without inquiring as to its effect or construction, except so far as may be necessary to determine which is the last will, when there are several instruments inconsistent with each other.

There can be but one last will, and yet several papers may, when taken together, constitute the last will.

Wills made under a power, must be executed with the same formalities and be proved in the same manner as proper wills. They must be proved in the Ecclesiastical or Probate Court; but that Court has nothing to do with the question, whether the power is well executed, or whether it authorizes the will, or in fact exists at all.

It is not necessary for the Probate Court to have before it the instrument containing the alleged power ; but if the testamentary paper be properly proved, the probate is limited, the decree declaring the instrument to be duly proved as a valid will, so far as it may be authorized by a valid power for that purpose,—thus leaving the question of its being a due execution of a power, for the determination of a Court of Construction.

A will in execution of a power, is ambulatory and revocable, in the same manner as a proper will.

The Revised Statutes declare, that a married woman may execute a power by devise, after attaining full age. Where M. M., a married woman, under a power to devise, executed a will in 1844, when she was a minor,—held that the will was invalid, as to real estate.

By our statute, an unmarried female is competent to make a will of personalty at the age of 16 ; and a married woman over that age, but under 21, may, under a power, execute a valid will of personal estate.

A revocatory clause in a will, of all former wills, is not always imperative, but its effect depends upon the intention to be gathered from all the instruments.

Wills devising and bequeathing all the real and personal estate of the testator, operate upon lands and personalty embraced in a testamentary power, although the power be not recited or referred to.

And where M. M. made a will under a power, in 1844, and after the passage of the Act, authorizing married women to devise, in 1849, executed a will, whereby, without formally reciting the power, she revoked all former wills, and devised and bequeathed all her real and personal estate to her husband ; —held, from the clause of revocation, the inconsistency of the testamentary dispositions in the last, with those in the first instrument, and from other circumstances indicating an intention to revoke, that the will of 1844, so far as it was a valid will, was revoked.

SAMUEL SHERWOOD, *for the Executor.*
DANIEL LORD, *for the Contestants.*

THE SURROGATE. In this case, John Sherwood propounded for probate an instrument, dated November 25, 1844. Merit Van Wert, having subsequently also offered

for proof, as the last will and testament of the deceased, another paper, dated June 23, 1849; I found it necessary to order both applications to be consolidated, tried and heard, as one proceeding.

The instrument executed in 1844, purports to have been made under a power given to the decedent, by the will of James Benedict, her father, to dispose of certain property in case of her decease without issue, " by her last will and testament, or writing in nature thereof, executed under her hand and seal, in the presence of one or more competent witnesses, notwithstanding her coverture." The decedent was born June 17, 1824, and when she attempted to execute this power in 1844, was an infant and a *feme covert*.

The paper executed in 1849, purports to be a proper will. The decedent was at that time of full age, though a *feme covert*. By the Act amending " the Act for the more effectual protection of the property of married women," passed April 11, 1849, any " married female" is authorized to " devise real and personal property, and any interest and estate therein, and the rents, issues and profits thereof, in the same manner and with like effect, as if she were unmarried." This act substantially repeals the restrictions contained in the Revised Statutes, against the validity of a will by a married woman in regard to real (2 *R. S.*, 57, § 1,) and personal estate. (2 *R. S.*, 60, § 21.) It removes a personal disability, and I do not understand that the power given to devise, is limited to subsequently acquired property. If it were, inasmuch as the capacity exists to make a will, when the will of a *feme covert* made subsequently to the passage of the act is properly proved, it is my duty to admit it to probate, leaving to the proper tribunals to determine, as occasion may arise, what property passes by it. The will made by Mrs. Van Wert, in June, 1849, ought, therefore, notwithstanding her coverture, to be admitted to proof as a valid will, subject to the single reservation, whether I must so admit it alone, or in connection with the instrument executed in 1844.

The will of 1844, professes to be made in execution of a power. Such wills have a peculiar operation, working not only an execution of the power, but also in many respects partaking of the qualities of a will, and being subject to the same general rules of construction. (*The Duke of Marlborough* vs. *Lord Godolphin*, 2 *Vesey Sen.*, 76; *Southby* vs. *Stonehouse*, *Ibid.*, 610.) The same formalities are requisite to their valid execution, and they are to be proved in the same manner as an ordinary will. Where a power of appointment over personal property is to be exercised by will, it has long been the established usage of the English Court of Chancery, not to receive any paper purporting to be a testamentary execution of such a power, unless it be first admitted to probate. (*Jones* vs. *Jones*, 3 *Meriv.*, 161; *Douglas* vs. *Cooper*, 3 *My. & K.*, 378; *Stevens* vs. *Bagwell*, 15 *Vesey*, 140, 153; 1 *Jarman on Wills*, 23.) The reason of the rule is, that whether a paper be testamentary or not, is exclusively for the Ecclesiastical Courts to determine. Other tribunals may decide as to the effect and construction of a will, but its proof belongs to the Court of Probate. But the Spiritual Court has nothing to do with the question, whether a will is a good execution of a power, or whether the alleged power authorizes a will, or in fact exists at all. These are all matters beyond its jurisdiction. Though it may be convenient for the Probate Judge to have produced before him, the instrument containing the grant of the power under which the will is claimed to have been made, it is by no means necessary. In *Re Monday*, 1 *Curt.*, 590, neither the settlement nor a copy of it was before the Court, and "there being no proof that the will was executed agreeably to the power," the motion to admit it was rejected. In *Allen* vs. *Bradshaw*, 1 *Curt.*, 110, the Court held, that "It cannot grant probate of the will of a married woman, when that fact appears, without requiring the production of the instrument under which she has acquired a privilege, to which she was not before entitled; and when it is satisfied that she has the

*potestas testandi*, the Court must then see that she has complied with the requisite formalities." These cases were decided in 1835 and 1837, and from an entire misconception of the principle intended to be sustained in *Turner* vs. *Hughes*, where it became necessary to inquire into the testamentary execution of a power, in order to pronounce upon the revocation of a prior will by one of a subsequent date. *Turner* vs. *Hughes*, 4 *Hagg.*, 30, was decided in 1831; and it was not till 1846, that this variation from the old course of the Spiritual Courts was corrected. In *Barnes* vs. *Vincent*, this important point was fully considered, and it was held, that the old and correct practice was for the Ecclesiastical Courts to pronounce merely on the testamentary character of the paper, where a power was alleged, and "that the safest and most consistent course is to grant probate wheresoever the paper professes to be made and executed under a power, and is made by one whose capacity and testamentary intention are clear, and no other objection occurs save those connected with the power;" and thus to "leave the Court, which has [to deal with the rights under that instrument, to decide whether or not it is authorized by that power, and by its execution." Lord Brougham delivered the opinion in this case, and proof of the will was decreed to be taken, "not looking at it as if it were the execution of a power." (*Notes of Cases in the Ecc. & Mar. Courts, vol. 4, supp.* 21.) No inconvenience, it seems to me, can arise from this practice, if the probate in such cases be always limited, the decree declaring the instrument to be duly proved as a valid will, so far as it may be authorized by a valid power for that purpose. This leaves open every question except such as are necessarily connected with the probate. (*In the matter of Stewart,* 11 *Paige,* 399.) I have dwelt on this point somewhat at length, as well from a desire to indicate the principles which should govern the Court in taking proof of a will executed under a power, as for the purpose of showing that the rule as laid down in *Vincent* vs. *Barnes*, does not

comprehend such questions of construction as are necessarily involved in determining which is the last will, where there are several instruments, inconsistent with each other. There can be but one last will, and yet several papers in harmony with each other, may, when taken together, constitute the last will, and a Probate Court is constantly called upon to construe a will and codicils, or independent wills, in order to decide which have been revoked and which are existing testamentary dispositions. In *Spratt* vs. *Harris*, 4 *Hagg.*, 405, administration was granted with two testamentary papers annexed. In *Masterman* vs. *Maberly*, 2 *Hagg.*, 235, an unexecuted will and two bonds, were all admitted to probate together. In *Sandford* vs. *Vaughan*, an allegation propounding four papers, as together containing the last will, was admitted to proof (1 *Phill.*, 39, 128); and in *Harley* vs. *Bagshaw*, five separate instruments were propounded, and three ultimately established as the last will. (2 *Phill.*, 48, 313; see also *Richardson* vs. *Barry*, 3 *Hagg.*, 249; *Ingram* vs. *Strong*, 2 *Phill.*, 313.) It is undoubtedly the single duty of the Probate Court, in the language of Lord Brougham, " to take proof of the instruments claimed and leave the construction to the proper tribunal;" but to settle whether or not one will revokes another, frequently involves questions of construction of the most intricate character, and it becomes, therefore, an incidental, but essential branch of jurisdiction; to entertain and decide such propositions; otherwise it would often be impossible to exercise the undoubted right, and perform the imperative duty, of determining which is the last will. Now, a will in execution of a power is ambulatory, and revocable like a proper will. (*Southby* vs. *Stonehouse*, 2 *Vesey Sen.*, 611.) It is revoked by the same circumstances as an ordinary will (*Cotter* vs. *Layer*, 2 *P. Wms.*, 623; *Duke of Marlborough* vs. *Lord Godolphin*, 2 *Vesey Sen.*, 75); and a question of revocation and construction, may, therefore, just as well and properly arise in such a case, as in regard to a common will.

I proceed then to inquire, in the first place, whether the instrument executed by Mrs. Van Wert, in 1844, was a valid will. The well recognized rule of Courts of Law and Equity, that where a will relates to personalty, it must be proved in the Spiritual Courts, has long been applied to an appointment by a *feme covert*, who could not strictly make a will (*Ross* vs. *Ewer*, 3 *Atkyn.*, 160, 356; 2 *Roper, Husband and Wife*, 188); though formerly a contrary notion prevailed. (*Shardelow* vs. *Naylor*, 1 *Salk.*, 313.) Testamentary appointments by married women, under a power secured by some grant or devise, have always been held valid in respect to both real and personal estate. (*Longford* vs. *Eyre*, 1 *P. Wms.*, 741; *Wagstaff* vs. *Wagstaff*, 2 *Id.*, 258; *Pemberton* vs. *Pemberton*, 13 *Vesey*, 297; *Hume* vs. *Rundell*, 6 *Madd.*, 331; *Jenkin* vs. *Whitehouse*, 1 *Burr.*, 431; *Stone* vs. *Forsyth*, *Doug.*, 707; *Bradish* vs. *Gibbs*, 3 *John. Ch.*, 523; *Kent's Com.*, 2, 161, 171; 4 *Ibid.*, 324.)

The Revised Statutes expressly declare in terms, that a married woman may execute a power by devise (1 *R. S.*, 732, § 80, 735, § 116), but subject to the limitation, that no power vested in a married woman during her infancy, can be executed by her until she attains her full age. (1 *R. S.*, *p.* 735, § 111.) The powers here referred to, relate only to real estate, and as an infant cannot devise lands, it follows very clearly, that whether viewed as a proper will, or as an appointment under a power, the instrument made by Mrs. Van Wert in 1844, is utterly invalid as to real estate.

At Common Law, a *feme covert* might make a will of personal estate, with the consent of her husband; but our statute has altered the rule, and prohibited a will by a married woman, of personal as well as of real estate; but this restriction does not extend to wills executed under powers. The statute of wills, 34 & 35 *Henry VIII.*, excepted married women, and yet, as is seen, testamentary appointments of real estate have always been sustained,

and the Common Law rule has been incorporated into the Revised Statutes. "It is wholly impossible, therefore," says the late Chancellor, "to suppose that the Legislature could have intended to give to a *feme covert* this right to dispose of real estate by devise, in which she had a beneficial interest under a power, and to deprive her of the right to make a similar disposition of her personal property by will, where such property was held by trustees for her separate use, with power to appoint the same by will at her death." (*Strong* vs. *Wilkin*, 1 *Barb. Ch. R.*, 9 ; *Moehring* vs. *Mitchell, Ibid.*, 272.) It is true the decedent was only twenty years of age when she made the will of 1844, but at Common Law, males at the age of 14, and females at the age of 12, were competent to make a will of personalty, and by our statute, personal property may be bequeathed by males at the age of 18, and unmarried females at the age of 16. The will of 1844, therefore, considered by itself, was as a testamentary appointment, valid in respect to the personalty, and invalid as to the realty, the same result that was attained in *Duff* vs. *Dalzell*, 1 *Bro. C. C.*, 147.

Was the will of 1844 revoked by the will of 1849, is the next question. By the introductory words of the will of 1849, Mrs. Van Wert declares in terms, that she revokes "all former will or wills" by her made. A revocatory clause is not always imperative, but its effect depends upon the intention to be gathered from both instruments. (*Denny* vs. *Barton*, 2 *Phill.*, 575.) The case of *Turner* vs. *Hughes*, 4 *Hagg.*, 30, to which I have already adverted in another connection, was similar in some respects, to the present one. There the testatrix had a power of appointment, and in 1815, made a will executing the power, and afterwards, in 1829, made another will, disposing of an estate over which the power extended, but without any recital of, or reference to the power. The last will contained a clause revoking all former wills. The case was taken to the High Court of

16

Delegates, where it was held, after argument by the most distinguished counsel, that it was the duty of the Court of Probate to decide whether the will of 1815 was revoked by the will of 1829, and to grant probate either of the will of 1829 alone, or of that and the will of 1815, with their codicils, as together containing the last will of the deceased. But the Court refused probate of both papers together, and admitted the will of 1829 alone, on the ground that although the clause of revocation in the will of 1829 was not *per se*, sufficient to revoke the first instrument, yet the contents of the will of 1829, taken altogether, clearly showed a departure from the original intention in 1815, and the first will was therefore revoked.

In endeavoring to ascertain the intention of the testatrix, I must not overlook the fact that our statute has materially altered the rule as to the testamentary execution of a power. By the Common Law, and previous to the Act, 1 *Victoria*, c. 26, a general devise, however unlimited in its terms, did not operate as an appointment. To make a will take effect as an execution of a power, there must have been either an express reference to the power itself, or to its subject, the property held under it. (1 *Sugden on Powers*, 386.) On the other hand, our statute declares (1 *R. S., p.* 737, § 124, § 126), that every instrument executed by the grantee of a power, conveying an estate which the grantee could not convey unless by virtue of his power, shall be deemed a valid execution thereof, though the power be not recited or referred to; and lands embraced in a power to devise, shall pass by a will purporting to convey all the real property of the testator, unless the intent that the will shall not operate as an execution of the power, shall appear expressly or by necessary implication. Now by the will of 1849, Mrs. Van Wert gives in case she dies without issue, " all " her " real and personal property." Such a clause, the statute says, shall pass lands embraced in a power to devise, unless a contrary intent appear expressly or by necessary implica-

tion ; which, however, is so far from being the case, that the other portions of the will go strongly to prove her intention to execute the power, instead of leading to the opposite notion. The real estate covered by the power passing, therefore, by the will of 1849, it is inconceivable that the testatrix should have intended the personalty, constituting part of the mixed fund over which the power extended, to be governed by the will of 1844. Had the will of 1844 been duly executed so as to pass real estate, it would have been revoked as to the realty by the will of 1849 ; the will of 1849 does in fact reach the lands embraced under the power ; and I cannot suppose that it was the design of the testatrix, at the very moment she declared all former wills revoked, to have by a rule of construction, an unascertained and undefined part of a fund go one way under one will, and another part go another way under another instrument. Nor do I think it unreasonable to apply the same rule which the Legislature have adopted for the construction of testamentary appointments in regard to real estate, to such appointments where they affect personal estate, and to hold that personalty covered by a power, shall pass by a bequest of " all the personal property," just the same as lands embraced in a power pass by a devise of " all the real estate." I think it would be a safe rule of construction, at least, in cases where the estate was a single fund of a mixed character, and the design of the testator was evidently to pass the entire *corpus* unbroken. It is not necessary, however, now to go to that extent, for it seems to me there are very decided evidences of intention in the will of 1849, to dispose of the personal estate affected by the power. The clause of revocation being contained in the introduction to the will of 1849, conveys to my apprehension the idea that the revocation of the will of 1844 was not an ordinary, incidental, formal act of the testatrix, but contrariwise, was uppermost in her mind, as a point of importance to be clearly understood, and not to be overlooked in making a

new will. In the first article of the will, she not only gives her husband " all her real and personal property," but adds, " and all real estate and personal property that has or may hereafter at any time come to me by right of heirship, or otherwise, by Pa's will." And again in the second article, she proceeds to give to her husband " all her interest by right of heirship in the household property belonging to her father's estate, and all other property of whatever name, nature, or kind." These provisions, though inartificially drawn, leave no slight impression on the mind as to their meaning and design. If the testatrix had intended to pass only such property as she had a general right to dispose of, it would have been palpably unnecessary after giving *all* her real and personal property, to allude in such express, repeated, and comprehensive terms to her father's will, and all property which had, or might thereafter, come to her thereunder, in any way. This *broad and sweeping* language would abundantly satisfy the Common Law rule, now so much narrower than that of our statute, and by its reference, first, to the will of her father which gave the power, and secondly, to the subject of the power, the property itself, would, I think, be sustained as sufficiently explicit, as respects both realty and personalty, to pass for a valid testamentary execution of the power in all its length and breadth. It is not unworthy of attention, also, in striving to reach the intention of the testatrix, that the contingency upon which the devise and bequest to her husband are made to take effect, —namely, her dying without issue, and which is carefully repeated in her will,—is the precise contingency upon which her right to dispose of the estate over which her power extended, is limited by her father's will, to take effect. This, it seems to me, is not an unimportant aid in determining what property she intended to reach by her will.

Again, it must not be forgotten, that subsequent to the execution of the will of 1844, the Legislature had removed

the disability of a married woman to make a will; so that there would not naturally be so formal and distinct a reference to the power, as when the right to make a will at all, depended entirely on the power. And also the provisions of the Revised Statutes being such, that a general devise of realty embraces lands covered by a power, would conduce likewise to a less explicit and definite reference to the power so far as the real estate was concerned. Taking all these circumstances into consideration, in connection with the introductory clause of express revocation, the fact that the will of 1844 was utterly invalid as to the real estate, and the manner in which the testatrix really seems to have struggled to express an intention to give every thing of which she had the power of disposition, to her husband, I cannot come to any other conclusion, than that the will of 1844, so far as it was duly executed, was revoked, and that the will of 1849 must be established, as the last will and testament of the deceased, and a valid will of real and personal estate.