ADJUDGED IN

# THE PREROGATIVE COURT

## OF THE STATE OF NEW JERSEY,

## MAY TERM, 1862.

---

HENRY W. GREEN, ESQ., ORDINARY.

---

SARAH B. SMITH, appellant, *and* JONATHAN E. McCHESNEY
and others, respondents.

A testator made a will in 1850, a codicil thereto in 1854, and a subsequent
will in 1858, by which he bequeathed and disposed of all his real and
personal estate without exception, and which contained a clause, "here-
by revoking all former wills, and declaring this to be my last will and
testament." After the last will had been admitted to probate, on an
application to admit to probate the codicil of 1854, it was *held* that the
last will contains both an implied and express revocation of the codicil.
The revocation extends to all prior testamentary dispositions of testa-
tor's estate, real and personal.

It is a principle, as ancient as it is familiar, that no man can have two wills.
The last will is of necessity a revocation of all former wills, so far as it
is inconsistent with them. So if one having made his will, afterwards
make another will inconsistent therewith, but not expressly revoking it,
this will nevertheless be a revocation.

This implied revocation is effected only when the last will is inconsistent
with the former; for it may be a will of different goods, or different
pieces of land, so that the two may be taken conjointly as the will of
the testator.

If the latter will contain an express revocation of the former, it is imma-

terial whether the latter be or be not inconsistent with the former, or whether it operates as a will at all or not.

It is undoubtedly true that the revocatory clause is not always inoperative, and that its effect depends upon the intention of the testator, but that intention must in every case be gathered from the contents of the instruments themselves. Parol testimony is inadmissible for this purpose. It is never admissible to contradict by parol the terms of a will, or to overturn its plain provisions.

On appeal from the Orphans Court of the county of Mercer.

*M. Beasley,* for appellant.

This codicil may be admitted to probate notwithstanding the last will, if the court is satisfied that it was not the intention of the testator to revoke the codicil. 1 *Williams on Executors,* 133; 2 *Greenleaf's Evidence,* § 682.

The clause in the will of 1858, by which testator declares that he "revokes all former *wills,*" has no other effect than to destroy the will of 1850. It does not revoke the codicil. *Van Wert* v. *Benedict,* 1 *Bradf.* 114, 121; *Denny* v. *Barton,* 2 *Phill.* 575.

The intention of the testator is clear from the testimony, and parol evidence is admissible to show his intention. 1 *Williams on Executors* 312; *Sandford* v. *Vaughn,* 1 *Phill.* 128.

*Richey,* for respondents.

The will of 1858 contains a total disposition of all testator's property.

This is an implied revocation of all former wills and codicils. It is inconsistent with the existence of any prior testamentary disposition of the property. 1 *Williams on Executors* 130; *Snowhill* v. *Snowhill,* 3 *Zab.* 447; 1 *Powell on Devises* 517; 2 *Greenleaf's Ev.,* § 681; 1 *Jarman on Wills* 156; *Cutty* v. *Gilbert,* 29 *Eng. Law and Eq.* 64, 69; *Moore* v. *Moore,* 1 *Phill.* 375.

Parol evidence is inadmissible, and if admissible is of little value against testator's acts; —— v. *Henning,* 1 *Phill.* 439.

Here is a clear and express revocation of all former wills. 1 *Jarman on Wills* 56 ; 2 *Greenleaf's Ev.*, § 681 ; *Boudinot's Ex'r* v. *Bradford*, 2 *Dall.* 267.

The execution of the second will is a destruction, and not a suspension of the former will. A subsequent destruction of the second will does not revive the first. *James* v. *Marvin*, 3 *Conn.* 576.

THE ORDINARY. Charles G. McChesney, of the city of Trenton, made and published his last will and testament, bearing date on the twentieth of October, 1858. The will contains a clause revoking all former wills. The testator died on the seventh March, 1861. This will, having been duly proved by the subscribing witnesses, was admitted to probate by the Orphans Court of the county of Mercer on the twenty-second of April, 1861. The testator had in his lifetime executed a previous will, bearing date on the twenty-eighth of January, 1850, and also a codicil to said will, bearing date on the twenty-seventh of April, 1854. This codicil was also offered to the Orphans Court for probate by Sarah B. Smith, the principal legatee therein named, but the court, by their decree, dated on the second of May, 1854, declared the said paper writing, purporting to be a codicil to the will of the said Charles G. McChesney, deceased, to be null and void, and denied probate thereof. From that decree the proponent appealed.

The only question involved in the controversy is, whether the will of 1858 operated as a revocation of the *codicil* to the will of 1850.

It is a principle, as ancient as it is familiar, that no man can have two wills. " A man," saith Swinburne, " may, as oft as he will, make a new testament, even until his last breath, neither is there any cautel under the sun to prevent this liberty. But no man can die with two testaments, and therefore the last and newest is of force. So that if there were a thousand testaments, the last of all is the best of all,

and maketh void the former." *Swinb. on Wills, part* 7, § 14.

As a necessary consequence of this doctrine, the last will is of necessity a revocation of all former wills, so far as it is *inconsistent* with them. So if one, having made his will, afterwards make another will inconsistent therewith, but not expressly revoking it, this will nevertheless be a revocation. 1 *Pow. on Dev.* 517.

This implied revocation is effected only when the last will is inconsistent with the former. For it may be a will of different goods, or different pieces of land, so that the two may be taken conjointly as the will of the testator. 1 *Powell* 518; 1 *Williams on Ex'rs* 135.

But if the latter will contain an express revocation of the former, it is immaterial whether the latter be or be not inconsistent with the former, or whether it operate as a will at all or not. *Powell* 116.

It is difficult to see how, under the operation of these familiar principles, the codicil offered for probate can be sustained as a subsisting testamentary instrument. By the codicil, dated in 1854, the testator gave to Sarah B. Smith, the appellant, five thousand dollars, and all the furniture and silver that belonged to his wife. He also gave the sum of twelve hundred dollars to his executor, in trust for certain purposes therein specified. By the will of 1858, which has been admitted to probate, he gives all his estate, real and personal without exception, to his wife for life, with power to dispose of one half by will to such persons as she may designate, the other half to go to the testator's heirs, under the direction of his wife. Here is an absolute disposition of all the testator's estate, real and personal, totally inconsistent with the disposition made by the codicil. The two cannot stand together. The will *ex necessitate* revokes the codicil, as well as the original will of 1850. The death of the wife before the testator cannot affect the question of revocation.

In *Henfrey* v. *Henfrey,* 2 *Curteis* 468, the testator left two wills of different dates, the latter disposing of the whole of

his property to his wife, but containing no appointment of executors and no revocation of the former will, nor of the appointment of executors therein. The latter was held to have revoked the former, and to be alone the will of the testator. Sir Herbert Jenner said, "the latter paper, in my view of it, was executed as a will, and not as a codicil, and being so executed, and a perfect instrument disposing of all the property, although there is no express revocation of the former will or of the appointment of executors, it is *ex necessitate* a revocation of the former will."

But the case of the respondent does not rest upon an *implied* revocation only. The will of 1858, which has been admitted to probate, contains this clause : " Lastly, I hereby constitute and appoint my dear wife executrix of this my last will and testament, hereby revoking all former wills, and declaring this to be my last will and testament."

Here is an express revocation of all former wills. The revocation extends to all prior testamentary dispositions of the testator's estate, real or personal. It is difficult to conceive of a clearer case of revocation, both implied and express, than is found upon the face of the testator's last will.

I do not understand it to be seriously contended, by the counsel of the appellant, that the clause of revocation does not extend to all former codicils, as well as to all former wills, or that a codicil is not a will within the common understanding of the term.

But it is urged that the revocatory clause is not always imperative, and that its effect depends upon the intention of the testator. That is undoubtedly true. The effect of every testamentary disposition depends upon the intention of the testator. But that intention must, in this as in every other case, be gathered from the contents of the instruments themselves. The authorities cited clearly establish this doctrine. *Denny* v. *Barton*, 2 *Phill.* 575; *Van Wert* v. *Benedict*, 1 *Bradf.* 121.

Parol testimony is inadmissible for this purpose. It is

never admissible to contradict by parol the terms of a will, or to overturn its plain provisions.

It is further urged, that the contents of the wills and the codicil, in connection with the circumstances of the testator's family, do in themselves furnish satisfactory evidence that the testator did not intend to revoke the codicil.

The testator had no children. The proponent was a niece of his wife, and an adopted daughter, who had resided for several years in his family, and to whom the evidence shows that he was sincerely attached. A portion of the testator's estate was derived from his wife. The primary design of the testator, both in the will of 1850 and in the will of 1858, was to secure his entire estate to his wife for her life, and on her death to place the one half of it under her control, thereby enabling her, at her pleasure, to make provision for the appellant. The other half of the estate is given to his own relations. In these respects the wills of 1850 and 1858 are nearly identical.

It appears, from the evidence, that the codicil of 1854 was prepared and executed by the testator on the eve of his embarking with his wife for Europe. The codicil (as are both the wills) is in the handwriting of the testator, and is written upon the same sheet with the will of 1850. It commences with the following recital: " Codicil to the foregoing will, which is to be considered and taken as part thereof.— Whereas my wife and self are about to visit Europe, and may not be spared to return, considering the uncertainty of life, I therefore give and bequeath to my adopted daughter, Sarah B. Smith, the sum of five thousand dollars, to be paid," &c. The writing concludes thus: " Lastly, I appoint Thomas J. Stryker my executor, to take upon himself the foregoing bequests. This codicil to be null and void should my dear wife return in case of my death only."

The main design of the codicil was to secure a provision for the adopted daughter in case of the death of her aunt. It doubtless occurred to him, that if his wife died abroad intestate her estate would go to her relatives generally. No

provision whatever was made for the appellant, and her share of the estate would go equally to her next of kin. If the testator died, and the wife returned, the codicil was to be void. But still another contingency presented itself Both the testator and his wife might die before their return, and in that event, although the wife survived her husband, no provision would have been made for the adopted daughter. To meet this contingency, on the twenty-sixth day of April, 1854, the testator and his wife executed a deed to the appellant, in consideration of natural love and affection, for valuable real estate in Hightstown. This lot, it appears, originally belonged to Mrs. McChesney, but it was built upon, and its value materially increased by the testator, and seems to have been considered as Mrs. McChesney's property. The evidence renders it probable, and I shall assume it as satisfactorily established, that this deed, with the will and other papers enclosed in a sealed envelope, were delivered by the testator before sailing for Europe to Mr. Stryker, the executor named in the codicil, with instructions endorsed upon the package, that if neither he nor his wife should return from Europe it should be delivered to Miss Smith. The package was returned to the testator on his return home. The execution of the codicil and the deed seem to have been designed solely to secure, in any contingency, a provision for the appellant in the event of the death of the testator's wife. If the wife died, being unable, as a *feme covert*, to dispose of her property, the will secured a provision out of the estate. If the wife returned, having survived the husband, she would be able to make provision out of her share of the testator's estate, and in that event the codicil was void. If neither returned, the deed would secure the provision out of the land which had belonged to the wife. I see no indication in the arrangement that it was the intention of the testator that the appellant should have both the legacy of five thousand dollars and the real estate conveyed by the deed. The plain and unmistakable design of the whole transaction was, that the appellant should be provided for, either by the

2 H*

legacy or by the gift of the land. It was not intended that she should take both.

The will of 1858 was executed as the testator was again about departing for Europe, and it is urged that, as the same circumstances continued, the same motives must have operated to continue the codicil in force then as at the time it was executed, and that the testator could not therefore have contemplated its revocation. The decisive answer to this argument is, that he did in fact revoke the codicil and all other wills in terms the most apt, clear, and unequivocal. Subsequently to his last return from Europe, on the fifteenth day of February, 1860, the testator and his wife executed to the appellant another deed for a lot of six acres near Hightstown. At the same time the grantee executed to the testator a lease for his life of all the lands conveyed to her by the testator and his wife. Both deeds appear to have been delivered to the appellant at the same time. They were recorded together soon after the death of Mrs. McChesney. The purpose of the codicil was thereby fully accomplished. Provision for the appellant was secured, in the mode originally contemplated by the testator, out of that portion of the property, the title to which was in his wife. And as the deeds were both executed in the lifetime of Mrs. McChesney, and recorded immediately after her death, the fair presumption is that they constituted the provision which the testator and his wife designed to make for their adopted daughter. However this may be, and whatever doubts might be suggested by the casual conversations of the testator, the legal rights of the parties are too clear to be mistaken.

The decree of the Orphans Court must be affirmed with costs.