OSWEGO COUNTY—HON. AMOS G. HULL, SURROGATE—March, 1863.

## MOORE v. GRISWOLD.

*In the Matter of proving the Last Will and Testament of* SAMUEL GRISWOLD, *deceased.*

Where a will appears, on its face, to have been duly executed and published as a last will and testament, in the presence of three witnesses, and after a lapse of thirty-five years, the witnesses being dead, their signatures and that of the testator are proved, and other facts appear indicating care and circumspection attendant upon the execution of the paper, —*Held*, that it will be presumed that all the other formalities required by law, for the attestation of a valid will, were complied with.

Proof that a will, subsequent to the one offered for probate, was made and duly executed and published by the testator, although the subsequent will cannot be found, and is not, therefore, offered,—*Held*, sufficient ground for refusing probate to the one offered.

The facts fully appear in the opinion.

R. H. TYLER, *for Ann Moore, the petitioner.*

COMSTOCK, NOXON, & COMSTOCK, *for A. V. G. Comstock, an heir.*

E. S. PARDEE, *for the heirs of Eliza Beach.*

S. N. DADA, *for Thetis Williams.*

THE SURROGATE.—Ann Moore, a daughter of the late Samuel Griswold, propounded for probate an instrument executed at Barkhamstead, Connecticut, bearing date the 14th day of January, 1828. All of the heirs and next of kin of the deceased, except one, filed allegations contesting the validity of the instrument, on the ground:

1. That the requirements of the law in respect to the publication of the instrument, the request to witnesses, and the signing of the witnesses in the presence of the testator at the end of the instrument, had not been complied with.

2. That the said Griswold had revoked the instrument offered for probate, by the subsequent lawful and valid execution of a last will and testament, containing a clause revoking all former wills.

The instrument presented for probate does not contain the usual attesting clause in full. It contains these words, however, at the conclusion: "I do, at Barkhamstead, this 14th day of January, A. D. 1828, sign, seal, and publish this as my last will and testament, hereby revoking all other wills by me made. In presence of." It is signed and sealed by the testator, and the signatures of three persons affixed as attesting witnesses.

Proofs were offered and admissions made by contestants, establishing the fact that all three of the subscribing witnesses are dead. Depositions were read, proving the signatures of the subscribing witnesses, and oral testimony was given, establishing the signature of the deceased. The paper was found, a few days before it was offered for probate, among the sermons of the deceased, sealed and indorsed as "the last will and testament of the Rev. Samuel Griswold."

The counsel for the contestants, to sustain his first point, cited the case of *Moultrie* v. *Hunt* (23 *N. Y.*, 394). But in that case it appears affirmatively that Hunt, the person executing the instrument, did not state to the subscribing witnesses the nature of the paper which he requested them to attest; but, in this case, nothing appeared to show that all of the formalities required by law had not been complied with.

The will, as appears on its face, having been signed, sealed, and published, as and for the last will and testament of the deceased, in presence of three witnesses, more than thirty-five years ago—and the witnesses being all dead, their signatures and that of the testator being proved, after this lapse of time ; taking into account the indorsement upon the paper, and other facts and circumstances proven on the trial, indicating the care and circumspection attendant upon the execution of the paper, under the authority of *Croft* v. *Pawlet* (2 *Strange*, 1109), *Chaffee* v. *Baptist Missionary Convention* (10 *Paige*, 85), I should be justified in presuming that all the other formalities required by law for the attestation of a valid will had been complied with.    There is no reason, therefore, in respect to all the formalities required in order to make the instrument valid, why it should not be admitted to probate.

But it is contended that a subsequent instrument was made, about the year 1851, revoking all former wills.    It was decided in the court of the King's Bench, in England, as long ago as 1688, that a subsequent valid will is a revocation of a former will *pro tanto.*    (*Hitchins* v. *Bassett*, 3 *Mod. Rep.*, 203; *Eggleston* v. *Speke*, *Id.*, 258.)    It was long a vexed question whether a subsequent will revoked a former one, unless the subsequent will contained a revoking clause. (*Willard on Ex.*, 119; *Van Wert* v. *Benedict*, 1 *Bradf.*, 114; *McLoskey* v. *Reid*, 4 *Id.*, 334.)

But our statutes, and the adjudication construing the same, have settled that question.    The Revised Statutes point out the only modes by which a will may be revoked or altered :

1. By some other will in writing.

2. By some other writing of the testator, declaring such revocation or alteration, and executed with the same formalities with which the will itself was required by law to be executed.

3. By burning, tearing, cancelling, obliterating, or destroying the will, with the intent of revoking the same by the testator himself, or by another person in his presence, by his direction or consent.

4. By certain changes in the testator's situation in life, as by marriage.

5. By partial revocations, occasioned by ademption of a legacy. (2 *Rev. Stat.*, 4 ed., 246.)

It is claimed by the contestants that the facts bring the case within the first subdivision above stated.

One witness testifies that about the year 1850 he called at the store of the deceased; that, after a little conversation, deceased inquired if the witness was in a hurry, and stepping a little from behind his counter, holding a paper in his hand, and looking out of the window, inquired of the witness who it was passing by; and being informed that it was Mr. Griffin, a neighbor, the latter was invited in by the deceased. The deceased then stepped behind the counter, still holding the paper, and addressing Griffin and the witness, remarked that his circumstances had somewhat changed recently, and laying the paper on the counter, said, " This is my last will and testament;" and further said, "I hereby revoke all former wills," moving his finger along down to the bottom of the paper; the deceased further saying, "This is my hand and seal." The deceased then showed where he wanted the witness and Griffin should sign their names, pointing out the place on the paper, and saying, "Gentlemen, I want you to sign there." The witness and Griffin then signed their names. The witness testified that as the deceased ran his finger along the paper, he said the words, "I hereby revoke all former wills." He testified that he saw the seal to the instrument at the time.

Mrs. Simmons, who had been some nine or ten years in the family of the deceased as housekeeper, and clerk in his store, testified that she saw the instrument referred to by the other witness, Mr. Somers, while it was being drawn; that the deceased wrote upon the paper a little every day, for several days, and laid it aside : that in his absence she read all that he had written, and that her reason for so doing was to ascertain whether he had made a legacy to her, as he had promised to do; that she read it over in company with Alex-

ander V. G. Comstock, a grandson of the deceased; that she saw the deceased sign and seal the will, and saw him call in Mr. Griffin to witness it the next morning after it was drawn, and saw Griffin and Somers sign their names as witnesses; that she remembered seeing a clause in the will revoking all former wills. Griffin, the other subscribing witness, was proved to be dead.

Under this testimony, it appears clear that the will of 1828, propounded for probate, had been revoked by the subsequent will above referred to. I, therefore, order that probate of the instrument propounded be denied, and that the same be held and declared to be invalid as a will of real or personal estate.

The application of some of the contestants to have the costs paid by Mr. Moore, personally, cannot be entertained. On finding the will, it became the duty of Mr. Moore to offer it for probate. I see nothing tending to show that he has transcended his duty in the matter. His costs, and the costs of the contestants, may be paid out of the estate. If the amount is not agreed upon among the heirs, the same may be taxed on the usual notice.